UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                          :
URBANRIDE, INC.,                                          :
                                                          :
                              Plaintiff,                  :
                                                          :          23-CV-6999 (JAV)
          -v-                                             :
                                                          :          OPINION AND ORDER
URBAN WORLDWIDE, INC.,                                    :
                                                          :
                              Defendant.                  :
                                                          :
------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

Since 2000, Plaintiff has provided chauffeured limousine service to customers under the name "UrbanRide."  It obtained a registered federal trademark for the UrbanRide mark in 2011.  It brings this suit against Defendant, which operates a similar ground travel services company under the name "Urban Worldwide.

Plaintiff asserts claims for trademark and service mark infringement under the Lanham Act and New York common law, false designation of origin under the Lanham Act, unfair competition under New York common law, and trademark dilution in violation of Section 360-1 of the New York General Business Law.  ECF No. 1 ("Compl."), ¶¶ 25-51.  Presently before the Court is Defendant's motion for summary judgment.  ECF No. 45.  For the reasons set forth below, the motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND[1]

Plaintiff ("UrbanRide" or "UR") provides chauffeured ground transportation services. Pl. 56.1 Response, ¶ 23. It was founded in 1999 and initially based in New York. *Id.*, ¶ 21. UrbanRide does not own its own fleet of cars, but instead operates by arranging transportation services through subcontractors. *Id.,* ¶ 24. The majority of its bookings are arranged on behalf of individuals by airline crew scheduling departments, corporate event planners, and travel agencies. *Id.*, ¶ 26.

The U.S. Patent and Trademark Office ("PTO") granted Plaintiff's registration for the trademark "UrbanRide" on September 6, 2011, in connection with "[c]oordinating travel arrangements for individuals and for groups; [l]imousine services." ECF No. 51-1 at 4. In doing so, the PTO did not require proof of secondary meaning. *See id.* at 2-6. The registration indicates that the mark was first used in commerce in November 2000. *Id.* at 4. Plaintiff's "UrbanRide" registration "consists of standard characters without claim to any particular font style, size, or color." *Id.*

---

[1] The Court draws its account of the facts from the parties' submissions on summary judgment, including Defendant's Local Rule 56.1 Statement, ECF No. 48 ("Def. 56.1 Statement") and Plaintiff's Response to Defendant's Local Rule 56.1 Statement, ECF No. 55 ("Pl. 56.1 Response" or "Response"). Citations to a party's Local Rule 56.1 statement incorporate the evidentiary materials cited therein. Where Plaintiff indicates in its Response that a fact is uncontested, the Court finds such facts to be true and cites directly to Plaintiff's Response. *See* S.D.N.Y. Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically denied and controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").

Defendant ("UW" or "Urban Worldwide") similarly operates a vehicle and transportation services business.  Def. 56.1 Statement, ¶ 6.  David Uziel, the owner of Urban Worldwide, founded the predecessor company, Urban Limos, under California law in 2012.  *Id.*, ¶¶ 8-15.

Defendant has operated in California and changed its name several times over the last 15 years.  From 2012 to 2016, Urban Limos employed three drivers in the San Francisco area.  Pl. 56.1 Response, ¶¶ 10-11.  In 2016, Urban Limos changed its name to Urban BCN.  *Id.*, ¶ 12.  In 2018, Urban BCN amended its articles of incorporation to change its name from Urban BCN to Urban BCN Worldwide, and in 2022 changed its name again to Urban Worldwide.  *Id.*, ¶¶ 13, 15.  The name change purportedly reflected a shift towards worldwide transportation services by using subcontractors or "affiliates."  *Id.*, ¶¶ 13-14.  Urban Worldwide arranged for these affiliates to provide transportation to its clients in other cities while billing and communicating with clients directly.  *Id.*, ¶ 14.

After rebranding as Urban Worldwide, Defendant began marketing itself under a logo which contains "URBAN" in a large, stylized font above the word "WORLDWIDE."  *See* ECF Nos. 46-4, 51-11.  The letter "A" in the word "URBAN" is in a customized blue font where the middle horizontal bar extends from the lower left corner across the letter "N."  *See* ECF Nos. 46-4, 51-11.

## LEGAL STANDARD

A grant of summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). "A fact is 'material' for these purposes when it might affect the outcome of the suit under the governing law. An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (cleaned up). The moving party has the burden of demonstrating the absence of a disputed question of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

The Court must view all facts "in the light most favorable" to the non-moving party, and draw all inferences in their favor. *Abramson v. Pataki,* 278 F.3d 93, 101 (2d Cir. 2002) (citation omitted). "[T]he judge must ask . . . not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252.

## DISCUSSION

### A.    Trademark Infringement under the Lanham Act

The Lanham Act, 15 U.S.C. § 1051 *et seq.*, creates a federal trademark registration system, functioning to protect the owner of a protected mark (the "trademark") from others using similar marks, where consumer confusion or dilution of the protected mark is likely. *See* 15 U.S.C. § 1051(a). The registrant must be the first to either use the mark or demonstrate in writing a good faith intent to do so in the future, to be granted exclusive rights to that trademark. *Id.* § 1051(a)-(b). The mark must also be considered "distinctive," meaning that the mark serves as a specific identifier to consumers of a product or service's source and is sufficiently dissimilar

4

from other marks. *Id.* § 1052(d), (f). When a registered mark is in use for five consecutive years subsequent to the date of registration, and there has been no proceeding invalidating those rights during that time period, the mark becomes incontestable. *Id.* § 1065.

"To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege sufficient facts to establish: (1) that the plaintiff's mark is entitled to protection, and (2) that the defendant's use of its mark is likely to cause consumers confusion as to the origin or sponsorship of its goods." *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 426-27 (S.D.N.Y. 2021) (cleaned up). A certificate of registration with the Patent and Trademark Office is *prima facie* evidence that the mark is entitled to protection. *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016).

With respect to the second prong, likelihood of confusion, plaintiff "must prove that numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark." *Time, Inc. v. Petersen Pub. Co.*, 173 F.3d 113, 117 (2d Cir. 1999) (cleaned up). Courts within the Second Circuit assess likelihood of confusion using an eight-factor test first articulated by Judge Henry Friendly in *Polaroid v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961). The eight factors are:

> (1) strength of the trademark;
>
> (2) similarity of the marks;
>
> (3) proximity of the products and their competitiveness
> with one another;

(4) evidence that the senior user may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product;

(5) evidence of actual consumer confusion;

(6) evidence that the imitative mark was adopted in bad faith;

(7) respective quality of the products; and

(8) sophistication of consumers in the relevant market.

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009). The application of this test is "not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused." *Id.* (citation omitted).

Summary judgment in a trademark action is appropriate "where the undisputed evidence would lead only to one conclusion as to whether confusion is likely." *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 478 (2d Cir. 1996). The Court therefore considers whether a reasonable factfinder could find a likelihood of confusion among consumers between the UrbanRide and Urban Worldwide marks applying the *Polaroid* factors.

### 1.    Strength of the Mark

Defendant primarily argues that the UrbanRide mark is so weak that Plaintiff cannot prevail on its infringement claim. ECF No. 47 ("Def. Br.") at 5-8. "The strength, or distinctiveness, of a mark is its power to identify the source of a product." *Time, Inc.*, 173 F.3d at 117. "When determining a mark's strength, courts consider both the mark's inherent distinctiveness,

based on the characteristics of the mark itself, and its acquired distinctiveness, based on associations the mark has gained through use in commerce." *Akiro LLC v. House of Cheatham, Inc.*, 946 F. Supp. 2d 324, 333 (S.D.N.Y. 2013). "With regard to all valid marks, the stronger the secondary meaning, the stronger the mark for the purpose of the first *Polaroid* factor." *Time, Inc.*, 173 F.3d at 118.

The Second Circuit has set forth four categories of marks to indicate their relative distinctiveness: generic, descriptive, suggestive, and arbitrary or fanciful. *The Sports Authority, Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 961 (2d Cir. 1996). "Registration by the PTO without proof of secondary meaning creates the presumption that the mark is more than merely descriptive, and, thus, that the mark is inherently distinctive." *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999). In this case, it is undisputed that the PTO granted Plaintiff a registration without requiring proof of secondary meaning. Plaintiff's mark is therefore presumed to be more than descriptive.

Even if Plaintiff's mark could be considered merely descriptive, to determine the strength of descriptive or suggestive marks, courts ordinarily look to the secondary meaning the mark has acquired. *Sports Authority*, 89 F.3d at 961. Yet an incontestable trademark cannot be challenged on the basis of lack of secondary meaning. *Time, Inc.*, 173 F.3d at 118 (citing *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 193 (1985)). As a

result, at the summary judgment stage, the fact that a mark is incontestable is a sufficient basis for the trier of fact to conclude that the mark is strong for purposes of the *Polaroid* test. *Sports Authority*, 89 F.3d at 961. It is undisputed here that Plaintiff's mark is incontestable. This prong thus weighs against Defendant.

Defendant suggests that the fact that Plaintiff's mark is incontestable should not affect the Court's analysis. Def. Br. at 13-14. In making this argument, Defendant relies on *Gruner + Jahr USA Pub. v. Meredith Corp.*, 991 F.2d 1072, 1078 (2d Cir. 1993). Yet *Gruner* reviewed the district court's findings of fact following a bench trial. At trial, the incontestability of the mark will not be determinative of its strength, as Defendant will be entitled to introduce evidence of independent indicia of weakness. *See Sports Authority*, 89 F.3d at 961. But for purposes of a summary judgment motion, incontestability is sufficient to create a triable issue as to the strength of the mark. *Id.*

### 2.    Similarity of the Marks

Defendant's contentions regarding the dissimilarity of the marks fare little better. Defendant reiterates an argument, previously rejected by the Court, that *Am. Cyanamid Corp. v. Connaught Lab'ys, Inc.*, 800 F.2d 306, 308 (2d Cir. 1986), dictates that the use of a common descriptive word as part of a mark cannot, as a matter of law, support a trademark infringement claim. Def. Br. at 6. According to Defendant, generic and descriptive terms must be stripped away before assessing

similarity.  Defendants urge the Court to disregard the word Urban in both names and look exclusively at the remaining words "Ride" and "Worldwide."  *Id.*  Since these words are dissimilar, and emphasize different aspects of their respective businesses, this prong would weigh in favor of Defendant.  *Id.* at 7-8.

For the reasons stated by District Judge Jennifer Rochon in denying Defendant's motion to dismiss, ECF No. 31 at 34:7–37:12, this argument ignores the Second Circuit's subsequent decision in *Banff, Ltd. v. Federated Dept. Stores, Inc.*, 841 F.2d 486 (2d Cir. 1988).  In *Banff*, the Second Circuit clarified that marks like the UR and UW marks should be treated as composites and that their suffixes should not be analyzed alone.  *Banff*, 841 F.2d at 491.  The Court therefore compares the two marks in their entirety.

"Similarity is a holistic consideration that turns on the marks' sight, sound, and overall commercial impression under the totality of the circumstances."  *Akiro*, 946 F. Supp. 2d at 334.  Courts must consider the "overall impression" created by the marks and "context in which [the marks] are found" that might contribute to consumer confusion.  *Gruner*, 991 F.2d at 1078.  "Where the goods at issue are identical, the degree of similarity necessary to support a conclusion of likely confusion declines."  *Zheng Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1373 (Fed. Cir. 2018).

"UrbanRide" and "Urban Worldwide" have an auditory and visual similarity.  In addition to having the word "urban" in common, the two names rhyme, with "worldwide" being just one syllable longer than "ride."  Notably, the PTO denied

UW's application to trademark its name, finding a likelihood of confusion between the UR and UW marks.  ECF No. 51-3 at 5-6.  The PTO particularly emphasized that they "share the first and dominant part(s) of the marks, namely, URBAN."  *Id.* at 5.  It further emphasized that "ride" and "worldwide" rhyme, and that the slight variation of those words does not avoid a likelihood of confusion.  *Id.* at 6.

Defendant argues that the physical appearance of its logo is distinct from UR's logo.  Def. Br. at 8.  But the Court must evaluate "the likely effect on consumers of the mark's [potential similarities] *with a focus on market conditions.*" *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 539 (2d Cir. 2005) (emphasis in original).  The record indicates that consumers often see the company names divorced from their logo, such as on signs held by drivers at the airport or through online searches.  Moreover, a "side-by-side" comparison of the logos and marks is not proper; rather, the Court looks to the impression these marks leave "when they are viewed sequentially . . . rather than simultaneously." *Id.*  On this record, any differences between the respective company logos does not suffice to establish that no reasonable factfinder could weigh this factor in Plaintiff's favor.

### 3.    Proximity of Marks and Competitiveness

UR and UW operate in substantially the same industry, providing ground transportation services throughout the United States.  "The closer the secondary user's goods are to those the consumer has seen marketed under the prior user's brand, the more likely that the consumer will mistakenly assume a common

source." *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 150 (2d Cir. 2003). Accordingly, this factor weighs heavily in favor of a likelihood of confusion.

### 4.    Bridge the Gap

The fifth factor looks to whether, when the products or services being provided are different, the likelihood that plaintiff will bridge the gap by selling the products being sold by defendants. *Id.* at 146-47. Considering that the parties are in the same industry and provide the same services, this factor is inapplicable here.

### 5.    Actual Confusion

Plaintiff has put forth anecdotal evidence demonstrating that in various cities, affiliates and drivers are confused as to the two parties. *See* ECF Nos. 51-8; 51-9; 52-1; 51-10 at 23:10–26:13, 28:9–30:3. In some instances, local dispatchers bill services rendered to the wrong company. *Id.* In other instances, the confusion results in a game of "telephone" as a pickup arranged by UrbanRide is mistakenly cancelled by Urban Worldwide, because the dispatcher cannot distinguish the two. *Id.* This leaves one party or another scrambling to ensure they can perform their most basic business function.

Defendant urges that this evidence is irrelevant, as the Lanham Act only protects against confusion in consumers, "not prospective employees or vendors." Def. Br. at 9. Yet the fact that those in the relevant industry express confusion at the similarity in names is at least probative of whether that similarity has also engendered confusion among consumers.

Defendant points to its commissioned survey, the results of which indicate a rate of 14.5% confusion among consumers, ECF No. 46-12 at 2-4, as being below a "judicially recognized" survey threshold of 15%.  Def. Br. at 11 (citing *1-800-Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1248-49 (10th Cir. 2013).  The caselaw does not establish any such rigid threshold, however.  Rather, *1-800-Contacts* stated that "surveys without obvious defects indicating confusion of seven percent to 15 percent of the sample have been held adequate, when supported by other evidence, to prove a likelihood of confusion," 722 F.3d at 1248-49 (emphasis omitted), while surveys that "dip below 10%" can "become evidence which will indicate that confusion is *not* likely," *id.* at 1249.

A consumer survey indicating a 14.5% net confusion rate therefore could support a finding of actual confusion, particularly when coupled with the other evidence in the record.  Certainly, a factfinder would have latitude to weigh this survey evidence flexibly as one of many factors in a *Polaroid* analysis.  *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1061 (2d Cir. 1979) (discussing "proper evaluative factors"); *cf. Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 631 F. Supp. 735, 744 (S.D.N.Y. 1985) (finding a survey result of 43% unpersuasive in light of other factors bearing against the survey).

## 6.    Bad Faith

The bad faith factor of the *Polaroid* test "looks to whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product."  *Lopez v.*

*Adidas Am., Inc.*, No. 19-CV-7631 (LJL), 2020 WL 2539116, at \*12 (S.D.N.Y. May 19, 2020).  "Selection of a mark that reflects the product's characteristics, request for a trademark search and reliance on the advice of counsel are factors that support a finding of good faith."  *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 583 (2d Cir. 1991).  In contrast, "[b]ad faith may be inferred from the junior user's actual or constructive knowledge of the senior user's mark," particularly if there is "additional evidence indicating an intent to promote confusion or exploit good will or reputation."  *Star Indus. v. Bacardi & Co.*, 412 F.3d 373, 388-89 (2d Cir. 2005).  But such knowledge is not dispositive of intent.  *See Folkes Home Servs. Heating, Cooling, Plumbing & Elec., LLC v. Folkes Bros. Home Servs. LLC*, No. 24-CV-9844 (NSR), 2026 WL 311515, at \*9 (S.D.N.Y. Feb. 5, 2026); *Miss Universe, L.P. v. Villegas*, 672 F. Supp. 2d 575, 589 (S.D.N.Y. 2009).

Plaintiff produced evidence indicating that Defendant was aware of UrbanRide's existence as of at least 2016.  ECF No. 51-15 at 167:10-17.  When Defendant decided to rebrand as Urban Worldwide, it did not conduct a trademark search, and it did not consult with an attorney.  *Id.* at 168:15-21.  Plaintiff also points to a number of discrepancies in Uziel's deposition testimony that arguably impugn his credibility.  ECF No. 54 ("Pl. Br.") at 20-21.  This evidence is sufficient to create a genuine issue of fact as to whether a factfinder could find bad faith.  That said, "the existence of bad faith . . . is [not] of high relevance to the issue of likelihood of confusion."  *Virgin Enters.*, 335 F.3d at 151.  This factor thus weighs in favor of Plaintiff, albeit weakly.

### 7.    Respective Quality

Neither party has submitted evidence from which the relative quality of each company's services can be assessed, and Plaintiff concedes that the quality of their respective services is comparable.  Pl. Br.at 23.  This factor similarly does not weigh heavily in the overall analysis, however.  "The issue of the quality of the secondary user's product goes more to the harm that confusion can cause the plaintiff's mark and reputation than to the likelihood of confusion."  *Virgin Enters.*, 335 F.3d at 152 (citation omitted).

### 8.    Sophistication of Consumers

The final factor, the relative sophistication of the consumer, weighs in favor of Defendant.  "Generally, the more inexpensive the product, the less careful the retail consumer is presumed to be because confusion is more likely where the goods are cheap and bought casually."  *Amplify Car Wash Advisors LLC v. Car Wash Advisory LLC*, 770 F. Supp. 3d 625, 639 (S.D.N.Y. 2025) (cleaned up).  In contrast, luxury chauffeured car services are not typically engaged impulsively or on a whim.  The record indicates that the most frequent consumers of these services are repeat players in the industry such as corporate clients, travel agencies, and airline scheduling departments.  Pl. 56.1 Response, ¶¶ 26-27.

\* \* \*

Weighing all the *Polaroid* factors together, the evidence adduced by Plaintiff is sufficient for a reasonable factfinder to find a likelihood of confusion.  Defendant's

14

motion for summary judgment with respect to the trademark infringement claims fails.

## B.    New York Common Law Claims

Under New York common law, the standards for trademark infringement and unfair competition are "virtually identical" to the standard under the Lanham Act. *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 229 (S.D.N.Y. 2023). The one substantive difference is that an unfair competition claim under New York common law requires an additional showing of bad faith. *Id.*

As discussed above, Plaintiff has adduced some evidence from which a fact finder could draw an inference of bad faith. Credibility determinations, and the drawing of inferences regarding intent, are best reserved for the trier of fact. *Easy Spirit, LLC v. Skechers U.S.A., Inc.*, 515 F. Supp 3d 47, 75 (S.D.N.Y. 2021) (reserving assessment of inconsistent testimony in connection with bad faith for a jury).

## C.    Section 360-l of the New York General Business Law

In contrast, Plaintiff fails to create a triable issue of fact with respect to its claim of trademark dilution. Section 360-1 of New York's General Business Law provides protection against an "injury to business reputation or of dilution of the distinctive quality of a mark or trade name." N.Y. Gen. Bus. Law § 360-l. To prevail on a claim for trademark dilution under Section 360-l, a plaintiff must show:

> (1) that it possesses a strong mark, one which has a distinctive quality or has acquired a secondary meaning such that the trade name has become so associated in the public's mind with the plaintiff that

it identifies goods sold by that entity as distinguished from goods sold by others, and

(2) a likelihood of dilution by either blurring or tarnishment.

*Disney Enters., Inc. v. Sarelli*, 322 F. Supp. 3d 413, 439 (S.D.N.Y. 2018).

The Court does not need to reach the issue of whether Plaintiff's mark is distinctive for purposes of its Section 360-1 claim because Plaintiff has failed to establish any likelihood of dilution. "Blurring occurs where the defendant uses or modifies the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *Id.* (citation omitted). Courts apply a six-factor test that looks to "(i) the similarity of the marks; (ii) the similarity of the products covered; (iii) the sophistication of the consumers; (iv) the existence of predatory intent; (v) the renown of the senior mark; and (vi) the renown of the junior mark." *Id.* at 440 (citation omitted).

Applying these factors here, they weigh overwhelmingly in favor of Defendant. As an initial matter, "[u]nlike claims for trademark infringement, no proof of 'competition between the parties or . . . confusion as to the source of goods or services' is required." *Id.* at 439 (quoting N.Y. Gen. Bus. Law § 360-1). To the contrary, blurring is particularly concerned with the appropriation of an established trademark to sell products dissimilar from those associated with the mark. *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 43 (2d Cir. 1994). "The classic case of dilution by blurring involves an unrelated product coopting a famous name or trademark as

16

its own—hypothetical anomalies such as Dupont shoes, Buick aspirin tablets, Schlitz varnish, Kodak pianos, Bulova gowns, and so forth." *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425, 433 (S.D.N.Y.) (cleaned up), *aff'd*, 674 F. App'x 16 (2d Cir. 2016) (summary order). "In each of those cases, the new use of the famous trademark may cause consumers to form new and different associations with the plaintiff's mark, thereby diluting the value of that mark." *Id.* (cleaned up). These concerns are not present here. The parties operate in the same industry and provide the same services of comparable quality. No reasonable factfinder could conclude that Urban Worldwide's use of its mark risks diluting UrbanRide's association with a chauffeured ground transportation service.

Moreover, Plaintiff has not provided evidence that its mark is of particular renown, or that it has more recognition among consumers than Urban Worldwide. This is not, then, the case of a junior mark seeking to piggyback on the success of a more famous brand name. There is no evidence on this record of predatory intent. And as discussed above, the consumer for chauffeured ground transportation services is likely to be more sophisticated.

Even drawing all inferences in favor of the non-moving party, Plaintiff fails to create a triable issue of fact as to its trade dilution claim. The Court therefore grants Defendant's motion for summary judgment on the trade dilution claim.

## CONCLUSION

For the reasons stated herein, Defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's claim of trade dilution

is dismissed.  Defendant's motion for summary judgment is otherwise denied.  The

Clerk of Court is directed to terminate ECF No. 45.

     SO ORDERED.

Dated: March 31, 2026
      New York, New York

_____
      JEANNETTE A. VARGAS
      United States District Judge